IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MOUNTAIN AMERICA CREDIT UNION, a federally chartered credit union,<br><br>      Plaintiff,<br><br><br><br><br><br>                      vs.<br><br><br>FRANK GODFREY, an individual, and WELLS FARGO INVESTMENTS, INC., LLC,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND ORDER OF PRELIMINARY INJUNCTION<br><br><br><br><br><br>Case No. 2:06-CV-481 TS |

This matter is before the Court on Plaintiff Mountain America Federal Credit Union's ("Plaintiff" or "MAFCU") Motion for Preliminary Injunction.[1]  Defendants[2] filed their opposition on July 7, 2006,[3] and Plaintiff filed its reply on July 11, 2006.  A hearing was held thereon on July 13, 2006.  At the close of the hearing, the parties elected to present their closing arguments

---

[1] Docket No. 5.

[2] Defendants Frank Godfrey and Wells Fargo Investments, LLC are jointly represented.

[3] Docket No. 13.

in written form, and the Court directed simultaneous briefing thereafter, which has now been completed.  The Court, having considered the pleadings and the arguments of counsel and being otherwise fully informed, will grant Plaintiff's Motion and issue a preliminary injunction against Defendants, as is more fully set forth below.

I.      BACKGROUND

Plaintiff originally brought this action in state court, but it was removed to this Court by Defendants on June 14, 2006.[4]  While this matter was pending in the state court, a Temporary Restraining Order (TRO) was issued by the state court judge on May 22, 2006.[5]  The TRO currently in place orders Defendants to: immediately cease and desist from soliciting persons he/it knows, or has reason to know, were Plaintiff's customer's during the preceding 12 months from April 28, 2006; cease and desist from using misappropriated confidential information relating to Plaintiff's customers; and immediately return any misappropriated customer information to Plaintiff, and destroy all copies of such information in Defendants' possession.

Plaintiff's Complaint[6] alleges the following six causes of action: breach of contract,[7] misappropriation of trade secrets,[8] intentional interference with economic relations,[9] a civil RICO

---

[4] Docket No. 1.

[5] *See* Docket No. 5.

[6] *See* Docket No. 11.

[7] Brought against Defendant Godfrey.

[8] Brought against both Defendants.

[9] Brought against Defendant Wells Fargo.

violation, a civil violation of Utah's Pattern of Unlawful Activity Act, and a request for

injunctive relief.  Here, the Court focuses its analysis on Plaintiff's misappropriation of trade

secrets claim.

II.    PRELIMINARY INJUNCTION STANDARD

The Tenth Circuit has made clear the standard for the grant of a preliminary injunction, as

follows:

> The requesting party must demonstrate (1) that it has a likelihood
> of prevailing on the merits; (2) that it will suffer irreparable harm
> unless the preliminary injunction is issued; (3) that the threatened
> injury outweighs the harm the preliminary injunction might cause
> the opposing party; and (4) that the preliminary injunction if issued
> will not adversely affect the public interest.[10]

The Court further stated that, "[a]s a preliminary injunction is an extraordinary remedy, the

[requesting party's] right to relief must be clear and unequivocal,"[11] and the movant must meet all

four requirements in order for the preliminary injunction to issue.

The Court will address each of the four elements, in turn.

III.   DISCUSSION

A.    Likelihood of Prevailing on the Merits.

The findings made herein are for the purposes of this Motion only, and the Court does not

at this time make any determination of the merits in the case beyond the required preliminary

injunction analysis.

---

[10] *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1246 (10th Cir. 2001)
(internal citations omitted).

[11] *Id.*

Under the Uniform Trade Secrets Act (UTSA), a "trade secret" is defined[12] as

> information, including a formula, pattern, compilation, program,
> device, method, technique, or process, that:
>> (a) derives independent economic value, actual or potential,
>> from not being generally known to, and not being readily
>> ascertainable by proper means by, other persons who can obtain
>> economic value from its disclosure or use; and
>> (b) is the subject of efforts that are reasonable under the
>> circumstances to maintain its secrecy.

Further, "misappropriation" is defined,[13] in relevant part, as:

> (b) disclosure or use of a trade secret of another without
> express or implied consent by a person who:
>> * * *
>> (ii) at the time of disclosure or use, knew or had
>> reason to know that his knowledge of the trade secret
>> was:
>>> * * *
>>> (B) acquired under circumstances giving rise
>>> to a duty to maintain its secrecy or limit its
>>> use; or
>>> (C) derived from or through a person who
>>> owed a duty to the person seeking relief to
>>> maintain its secrecy or limit its use . . .

Regarding whether the notebook at issue ("the list") qualifies as a trade secret under the

UTSA as it applies to this case, Plaintiff must establish that the list was a compilation of

information, that it has independent economic value, and that Plaintiff made efforts to maintain

its confidentiality.  If the list qualifies as a trade secret, then Plaintiff must establish that it was

misappropriated by non-consensual disclosure as set forth above.

---

[12] Utah Code Ann. § 13-24-2(4).

[13] Utah Code Ann. § 13-24-2(2).

4

1.      Trade secret.

The Court finds that Plaintiff has established that the list is a compilation of information. Evidence produced at the hearing establishes that the list contained approximately 600 MAFCU customers, and was compiled through random telephone calls received from clients, and from lists he obtained from investment providers.  The list included alphabetized lists of customers from pre-existing customer lists that were not available but from Defendant Godfrey's employment with MAFCU.

The Court finds that the list has independent economic value because it is a selective compilation which includes information about specific persons who have purchased investment and insurance products from MAFCU and, as just noted, that information was not available to the public or otherwise, but for Defendant Godfrey's employment with MAFCU.  While the names of customers appearing on the list may or may not appear in public telephone directories, those public listings would not tend to reveal that those individuals were predisposed to purchase specific investment products.

The Court further finds that MAFCU made reasonable efforts under the circumstances to maintain the secrecy of the information and sought to maintain that confidentiality through the non-solicitation and confidentiality agreement at issue in this case.  The evidence before the Court on this matter consists of two confidentiality contracts signed by Defendant Godfrey, as well as an employee handbook.

    2.    Misappropriation.

Both Defendants Godfrey and Wells Fargo testified that Godfrey shared his notebook with Wells Fargo.  The testimony further established that Defendant Wells Fargo was aware of the confidentiality between Plaintiff and Defendant Godfrey.  Testimony from Defendant Godfrey established that he used the list to call MAFCU clients.  Although both Defendants testified that Godfrey followed the "script,"[14] which explicitly forbids solicitation,[15] the testimony of three non-party witnesses contradicted Defendants' assertion.  Witnesses Seybolt, Best and Bullough all testified that Defendant Godfrey asked them if they would like to follow him to his new employer, Wells Fargo.

While the Court does not make the express finding that Defendants misappropriated trade secrets as alleged, the Court finds that there is a substantial likelihood that Plaintiff may prevail on the merits of its claim of misappropriation of trade secrets.  Given this finding, the Court need not discuss the remaining causes of action.

    B.    Irreparable Harm.

Testimony offered at the hearing by Matthew Clark, vice president of the investment/retirement group at MAFCU, established that the kinds of clients ("members") at issue in this case – "investment members" – were much more valuable to MAFCU than other types of members, because they generate various and multiple kinds of other business for

---

[14] Defendants Ex. B.

[15] The "script" specifically states: "Do not solicit the customer's business.  That means do not ask him or her to transfer his or her account(s) or otherwise attempt to persuade him or her to do so unless you are responding to a specific question."  *Id.*

MAFCU.  Mr. Clark testified that MAFCU has conducted research which established that investment members have, on average, four times more savings at the credit union than non-investment members, and that investment members tend to enlarge their investment portfolios over time.  His testimony further noted that MAFCU investment representatives make approximately 60% of their sales to existing investment members.  Regarding the names of members contained on the list, Mr. Clark testified that a random sampling of 26 of those customers had collectively invested over one million dollars with MAFCU's investment division.  As such, Mr. Clark testified that it would be difficult to measure damages, and that the estimated number of 45 transfers from MAFCU to Wells Fargo from approximately 100 calls placed by Defendant Godfrey is of "great concern" to MAFCU.  This testimony was not refuted by Defendants.

The Court finds that Plaintiff would suffer irreparable harm unless a preliminary injunction is issued.

C.      Balancing of Harms.

At the hearing, Defendant Godfrey testified that he spends only 1-2 minutes per day with clients which originated from MAFCU.  Further, Defendant Wells Fargo's representative, Brett Smith, testified that the list had very little value to Wells Fargo.

The Court notes the incongruity between Defendants' vigorous defense of its possession and use of the list, while testifying at the hearing that it was of little value to them.  In any event, it is clear to the Court that any threatened injury to Defendants is minimal.  On the other hand, as noted above, the harm to Plaintiff is substantial.

The Court finds that the threatened injury outweighs the harm the preliminary injunction might cause the opposing party.

        D.     <u>Public Interest</u>.

There is a strong public interest in requiring adherence to contracts and statutes.  The Court finds that the preliminary injunction will not adversely affect the public interest and, in fact, will promote it.

IV.    <u>CONCLUSION AND ORDER OF PRELIMINARY INJUNCTION</u>

Based upon the above, the Court finds that Plaintiff's right to relief is clear and unequivocal, and it is hereby

ORDERED that Plaintiff's Motion for Preliminary Injunction (Docket No. 5) is GRANTED.  It is further

ORDERED that Defendant Frank Godfrey is hereby preliminarily enjoined and ordered, from the date of this Order until further order of the Court, as follows:

(1) to cease and desist from soliciting persons that he knows, or has reason to know, were Plaintiff's customers during the twelve months before April 28, 2006;

(2) to cease and desist from using misappropriated "Confidential Information" (as such term is defined in the Agreement) relating to Plaintiff's customers; and

(3) to immediately return any misappropriated customer information to Plaintiff, and to destroy all copies of such information in Defendant's possession.

It is further

ORDERED that Defendant Wells Fargo Investments, LLC is hereby preliminarily enjoined and ordered, from the date of this Order until further order of the Court, as follows:

(1) to cease and desist from soliciting persons whose identities it has come to know, or has reason to know, through misappropriated information, where Plaintiff's customers during the twelve months before April 28, 2006;

(2) to cease and desist from using misappropriated "Confidential Information" (as such term is defined in the Agreement) relating to Plaintiff's customers; and

(3) to immediately return any misappropriated customer information to Plaintiff, and to destroy all copies of such information in Defendant's possession.

SO ORDERED.

DATED  July 28, 2006.

BY THE COURT:

_____
TED STEWART
United States District Judge

9